UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHRISTOPHER STAMPS** | **CIVIL ACTION NO. 20-0095** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN WYLES, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Defendants Warden Wyles, Sergeant Goff, Lieutenant Hatten, Warden Callender, Tyler Varnado, and Nurse Corley move for summary judgment on grounds that Plaintiff Christopher Stamps failed to exhaust all of his administrative remedies.[1] [doc. # 28]. Plaintiff opposes the motion. [doc. # 32]. For reasons below, the Court should grant defendants' motion and dismiss Plaintiff's claims against the moving defendants.

**Background**

Plaintiff Christopher Stamps, a prisoner at Caldwell Correctional Center ("CCC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately January 21, 2020, under 42 U.S.C. § 1983. He claims that, on December 12, 2019, at CCC, Sergeant Goff sprayed him with a chemical agent because he failed to close his eyes during a search. [doc. # 1, p. 3]. Plaintiff did not pose a threat. [doc. # 8, p. 2]. He arrived at CCC the previous day and was therefore unaware of how to conduct himself during a search. [doc. # 1, p. 3].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff claims that, following the spraying, he was left in his bed for thirty minutes, strip searched, placed in a room for another thirty minutes, and then placed in "lockdown" for four days without "a shower or decontamination," a toothbrush, a towel, or soap. *Id.*

Plaintiff claims: "Throughout the 4 days I asked multiple staff to look at my rash between my legs and to shower but was told by Sergeant Young and Sergeant Varnado that I must be in lockdown for 2 days before you can shower." *Id.* He claims that Sergeant Young and Sergeant Varnado deprived him of a shower, which he needed to ameliorate the painful and harmful effects of the chemicals. [doc. # 8, p. 1].

Plaintiff claims that after he alerted Sergeant Varnado that his pain was worsening, Varnado denied him medical care. *Id.*

Plaintiff claims that Lieutenant Hatten denied him clean clothing, forcing him to sleep in the "jumper" in which he was sprayed. [doc. #s 1, p. 3; 8, p. 1]. Plaintiff informed Hatten that the contaminated clothing was spreading the chemicals through his body and "making matters worse." [doc. # 8, p. 1].

Plaintiff claims that Nurse Corley never responded to his December 16, 2019 request for care. [doc. #s 1, p. 3; 8, pp. 1, 3]. In his request, he informed Corley that he had a skin rash and an infection which were worsening because he lacked "decontamination" for four days after he was sprayed with a chemical agent. [doc. # 8, p. 3]. Corley's inaction following Plaintiff's request allegedly exacerbated (and continue to exacerbate) his injuries. *Id.* As of approximately March 8, 2020, Plaintiff had not received any medical care. *Id.*

Plaintiff claims that Warden Callender denied him medical care following his first grievance. [doc. # 1, p. 3]. He informed Callender of his condition and Nurse Corley's refusal

to provide treatment. [doc. # 8, p. 2]. Callender told Plaintiff he would send a nurse, but Plaintiff never saw a nurse, and he remains bereft of medical care. [doc. #s 1, p. 3; 8, pp. 2-3].

Plaintiff claims that Warden Wyles failed to provide medical attention after he informed Wyles of the severity of his pain, his troubles sleeping and walking due to the pain, and the lack of medical care. [doc. # 8, p. 2].

Plaintiff suffers when he walks due to rashes between his legs, and his sleep is affected by itching and burning. [doc. # 1, p. 3]. He has a skin rash and an infection that has spread and caused pain, scabs, inflammation, bumps that burn, and skin peeling, deterioration, and discoloration. [doc. # 8, pp. 2-3]. His "left eye duct leaks randomly." *Id.* He seeks an unspecified amount of "financial compensation for pain and suffering." [doc. # 1, p. 4].

## **Law and Analysis**

A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The

moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[2]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-

---

[2] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

B. <u>Exhaustion Principles</u>

Under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua,* 342 Fed. App'x. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford,* 548 U.S. at 89–93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted). An inmate is required to

---

[3] I.e., beyond doubt.

"exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. See, e.g., *Williams v. Henagan,* 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas,* 76 Fed. App'x. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Exhaustion is an affirmative defense; thus, the burden is on the defendant to establish that the plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). If a defendant meets this burden, a court has no discretion to excuse the plaintiff's failure. *Gonzales v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012).

C. <u>Analysis</u>

Defendants maintain that Plaintiff exhausted all of his available administrative remedies, but he failed to do so before he filed this proceeding:

> Plaintiff here filed his first-step inmate grievance on December 19, 2019. The first-step grievance was denied, and Plaintiff requested a second-step review by the Warden. The second-step grievance was denied and Plaintiff then requested the third-step review by the Chief Deputy. The Chief Deputy timely responded on January 28, 2020. However, prior to receiving that response and concluding the ARP process, Plaintiff filed the instant lawsuit on January 21, 2020. § 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . . " *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (emphasis added)). As a result, Plaintiff's suit is premature despite the fact that he ultimately exhausted the available remedies after filing.

[doc. # 28-2]. Defendants present the following statements of fact:

> (1) Plaintiff filed the instant pro se §1983 suit on January 21, 2020.
>
> (2) At the time of filing, Plaintiff was an inmate being housed in the Caldwell Parish Correctional Center ("CPCC").
>
> (3) The Caldwell Parish Correctional Center ("CPCC") has a three-step administrative remedy procedure ("ARP") that is explained to all inmates at the

6

facility and which is also explained in the inmate handbook provided to and available to all inmates at the facility.

(4) Step one of the CPCC ARP is to file an inmate grievance within 30 days of the date of the incident or issue that forms the basis of the grievance.

(5) Step-one grievances are answered by the Deputy Warden within ten days of the filing of the grievance, although the Deputy Warden may request an extra five days to respond if needed.

(6) If the inmate is not satisfied with the step-one response or does not receive a step-one response within 15 days, the inmate has five days to proceed to step two of the ARP.

(7) Step two of the CPCC ARP is to file a request for review by the Warden.

(8) The Warden will provide the step-two response within ten days of receipt of the request for review.

(9) If the inmate is not satisfied with the step-two response or does not receive a step-two response within ten days, the inmate has five days to proceed to step three of the ARP.

(10) Step three of the CPCC ARP is to file a request for review to the Chief Deputy.

(11) The Chief Deputy will provide the third-step response within 30 days of receipt of the request for review.

(12) Plaintiff here filed his first-step inmate grievance on December 19, 2019.

(13) The first-step grievance was denied, and Plaintiff requested a second-step review by the Warden.

(14) The second-step grievance was denied, and Plaintiff then requested the third-step review by the Chief Deputy.

(15) The Chief Deputy timely responded on January 28, 2020.

[doc. # 28-1].

Plaintiff attempts to dispute defendants' first statement of fact, arguing that he did not file this proceeding until February 27, 2020, when he secured in forma pauperis status. [doc. # 32, p. 1]. Plaintiff is incorrect: he filed this proceeding at the latest on January 21, 2020.[4] [doc. # 1].

Plaintiff does not controvert defendants' remaining statements of fact; thus, the undersigned deems them admitted. L.R. 56.1, 56.2. In effect, Plaintiff does not genuinely dispute any material fact.

As defendants correctly highlight, 42 U.S.C. § 1997e, "plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending." *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998). "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Plaintiff does not genuinely dispute that he failed to complete all three steps of the administrative remedy process before filing this proceeding.[5]

---

[4] "A civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3. Further, "A paper not filed electronically is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk." FED. R. CIV. P. 5(d)(2). "The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." *Id.* § (d)(4).

In addition, a pro se prisoner's Section 1983 complaint is deemed filed when the prisoner tenders the Complaint to prison officials for mailing (i.e. the 'mailbox rule'). *Cooper v. Brookshire,* 70 F.3d 377, 379 (5th Cir. 1995).

[5] See *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019), as revised (July 2, 2019) ("Because Bargher thus filed his § 1983 complaint prior to the completion of the administrative grievance process, the district court properly found that Bargher failed to exhaust the required administrative remedies before bringing this suit while incarcerated.").

8

Plaintiff, however, contends that defendants are not entitled to judgment as a matter of law. He argues that the Louisiana Department of Public Safety and Corrections' ("LDPSC")[6] administrative remedy procedure, 22 La. Admin. Code Pt I, 325 (as opposed to the procedure at CPCC), controls and permitted him to file this proceeding. [doc. # 32, p. 1]. He maintains that, in addition to the grievances he filed at CPCC, he filed two "A.R.P.'s" which CPCC officials did not answer. *Id.* at 1-2. According to Plaintiff, the LDPSC procedure "states that after two (2) A.R.P.'s"—as opposed to grievances—"are filed and not answered, inmates may then file A.R.P.'s with Dept. of Corrections and file 1983 form." *Id.* at 2.

Plaintiff similarly argues that the LDPSC administrative remedy procedure requires CPCC to issue "A.R.P.'s," to LDPSC inmates, but CPCC only issues inmate grievances. *Id.* at 1. He adds, "By DOC standards, A.R.P.'s and parish facility grievances are not the same." *Id.*

Distilled, Plaintiff's contention is that the LDPSC administrative remedy procedure,[7] not the procedure at CPCC, controls. *Id.* Plaintiff is incorrect:

> [P]roper exhaustion . . . means using all steps that [a correctional facility] holds out, and doing so *properly* (so that the [correctional facility] addresses the issues on the merits). Importantly, to properly exhaust a claim, a prisoner must compl[y] with [the correctional facility's] deadlines and other critical procedural rules. These applicable procedural rules that a prisoner must properly exhaust are defined not by the PLRA, but by the [correctional facility] grievance process itself.

*Phillips v. Green*, 814 F. App'x 852, 854 (5th Cir. 2020) (internal quotation marks and quoted sources omitted); see *Jones v. Bock*, 549 U.S. 199, 200 (2007).

---

[6] Plaintiff refers to the LDPSC as the "DOC."

[7] 22 La. Admin. Code Pt I, 325

9

In *Phillips*, the plaintiff argued "that he, as a DOC inmate, even though being held in the jail, should have had 90 days under Louisiana Administrative Code Title 22, § 325, rather than 30 days under the jail's administrative-remedy procedure, to file a grievance." *Phillips*, 814 F. App'x at 854. The court rejected the argument: "Phillips claims DOC inmates are entitled to 90 days to file a grievance; but, because he did not properly exhaust the administrative remedies provided to him by the jail in which he was being held, his claim must be dismissed unless the jail's procedure was unavailable." [8] *Id.* at 855.

Here, Plaintiff does not claim that CPCC's administrative grievance procedure was unavailable. Phrased differently, he does not genuinely dispute that the procedure was available to him. Thus, the procedure at CPCC controls.[9] As there is no genuine dispute that Plaintiff failed to exhaust all available administrative remedies under the CPCC procedure before filing this proceeding, defendants are entitled to judgment as a matter of law.

---

[8] This conclusion is consistent with Louisiana law. Under LA. REV STAT. § 15:1171(A) (emphasis added), "The Department of Public Safety and Corrections *and* each sheriff may adopt an administrative remedy procedure at each of their adult and juvenile institutions, *including* private prison facilities." "The department or sheriff may also adopt . . . administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof, the contractor operating a private prison facility or any of its employees, shareholders, directors, officers, or agents, or a sheriff, his deputies, or employees, which arise while an offender is within the custody or under the supervision of the department, a contractor operating a private prison facility, or a sheriff. . . . Such administrative procedures, when promulgated, *shall provide the exclusive remedy* available to the offender for complaints or grievances governed thereby insofar as federal law allows." *Id.* § (B) (emphasis added).

[9] Even assuming the LDPSC policy controlled, Plaintiff would not have exhausted his available administrative remedies before filing this proceeding. As defendants correctly reason: "DPS&C's ARP policy is outlined in the Louisiana Administrative Code. It requires an inmate who fails to receive a response to a grievance to move on to the next step in the process. To completely exhaust the entire process while never receiving a response at any step would require 80 to 90 days after the initial filing. LAC 22:I.325(J)(c). Therefore, even if Plaintiff had filed grievances in December of 2019 as he claims, his January 2020 lawsuit would remain premature under DPS&C policy as well." [doc. # 33, pp. 4-5].

Although dismissal for failure to exhaust administrative remedies is typically without prejudice,[10] the Court is authorized to dismiss Plaintiff's claims with prejudice with respect to his right to re-file them in forma pauperis ("IFP"):

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled—that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff's] action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock,* 549 U.S. 199, 216 (2007)).

The foregoing approach is appropriate here.  Accordingly, if Plaintiff has exhausted his administrative remedies with respect to the claims here, he may present the claims again, but he may not proceed in forma pauperis to do so.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that defendants' Motion for Summary Judgment, [doc. # 28], be **GRANTED** and that Plaintiff Christopher Stamps' claims against the moving defendants be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies but **WITH PREJUDICE** for purposes of proceeding in forma pauperis under 28 U.S.C. § 1915.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

---

[10] See, e.g.*, Cooper v. Quarterman,* 342 Fed. App'x. 12, 13 (5th Cir. 2009).

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 19th day of November, 2020.

Karen L. Hayes
United States Magistrate Judge